UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EDWARDS & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:06-CV-0751-G |
| ATLAS-TELECOM SERVICES - USA, | ) | |
| INC., ET AL., | ) | **ECF** |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are the defendants' thirteen motions to dismiss and three

supplements to those motions.[1]  For the reasons stated below, the plaintiff shall

---

[1]     (1) Motion to Dismiss for Lack of Subject Matter Jurisdiction by
Defendants Atlas - Telecom Services - USA, Inc., John Tidrow, John Tidrow and
Associates, Inc., Atlas Telecom Networks, Inc., Philippe Bednerek, Ernesto Calzado
and Sandy Barnes and Memorandum of Law in Support Thereof ("12(b)(1)
Motion") (docket entry 40); (2) Supplement to Motion to Dismiss for Lack of
Subject Matter Jurisdiction (docket entry 80); (3) Defendant's Motion to Dismiss for
Lack of Personal Jurisdiction and Memorandum in Support Thereof (docket entry 2);
(4) Defendant Atlas Telecom Services - USA, Inc.'s Supplemental Motion to Dismiss
for Lack of Personal Jurisdiction and Memorandum in Support Thereof (docket entry
(continued...)

amend its complaint in conformity with this memorandum order and opinion; as a result, all pending motions to dismiss are denied as moot, provided, however, that the defendants shall have leave to reassert their motions to dismiss following the amendment of the plaintiff's complaint.

## I.  BACKGROUND

This case arises from the purchase by the plaintiff Edwards & Associates, Inc. ("Edwards" or "the plaintiff") of certain convertible debentures in Millennium Armor

---

[1](...continued)
24); (5) Defendant Sandy Barnes' Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum in Support Thereof (docket entry 45); (6) Defendant Ernesto Calzado's Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum in Support Thereof (docket entry 46); (7) Defendant Atlas Telecom Networks, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum in Support Thereof (docket entry 47); (8) Defendant Philippe Bednerek's Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum in Support Thereof (docket entry 48); (9) Defendant's Motion to Dismiss for Plaintiff's Failure to State a Claim and Memorandum in Support Thereof ("ATS 12(b)(6) Motion") (docket entry 5); (10) Defendant Atlas Telecom Services - USA, Inc.'s Supplemental Motion to Dismiss for Plaintiff's Failure to State a Claim and Memorandum in Support Thereof ("ATS 12(b)(6) Supplement") (docket entry 25); (11) Defendant John Tidrow and Associates, Inc.'s Motion to Dismiss for Plaintiff's Failure to State a Claim and Memorandum in Support Thereof ("JTA 12(b)(6) Motion") (docket entry 20); (12) Defendant John Tidrow's Motion to Dismiss for Plaintiff's Failure to State a Claim and Memorandum in Support Thereof (docket entry 22); (13) Defendant Philippe Bednerek's Motion to Dismiss for Plaintiff's Failure to State a Claim and Memorandum in Support Thereof (docket entry 41); (14) Defendant Ernesto Calzado's Motion to Dismiss for Plaintiff's Failure to State a Claim and Memorandum in Support Thereof (docket entry 42); (15) Defendant Atlas Telecom Networks, Inc.'s Motion to Dismiss for Plaintiff's Failure to State a Claim and Memorandum in Support Thereof (docket entry 43); and (16) Defendant Sandy Barnes' Motion to Dismiss for Plaintiff's Failure to State a Claim and Memorandum in Support Thereof (docket entry 44).

Corporation ("Millennium").  Plaintiff's Amended Original Petition ("Amended Petition") (docket entry 16) ¶ 21.  "Edwards & Associates, Inc." is the assumed name of National Architectural Products Company, a legal entity formed under the laws of Texas.  Plaintiff's Response to Motion to Dismiss Filed by Defendants Atlas - Telecom Services - USA, Inc., John Tidrow and Associates Inc., John Tidrow, Sandy Barnes, Lenny Feiner, Atlas Telecom Networks, Inc., Philippe Bednerek and Ernesto Calzado for Lack of Subject Matter Jurisdiction ("12(b)(1) Response") (docket entry 53) at 12.  Millennium, which is not a named defendant in this action, is a corporation also formed under the laws of the state of Texas.  *See* Plaintiff's Response to Motion to Dismiss Filed by Defendant Atlas Telecom Service - USA, Inc. for Lack of Personal Jurisdiction ("ATS 12(b)(2) Response") (docket entry 30) at 8.  According to the petition, in April of 2002, Edwards purchased from defendant John Tidrow ("Tidrow"), a resident of Virginia, and Lenny Feiner ("Feiner"), a resident of Texas, convertible debentures in the amount of $125,000 for use in two companies -- Millennium and John Tidrow & Associates, Inc. ("JTA").  Amended Petition ¶¶ 4, 6, 21.

The petition avers that Millennium was the "alter ego" of JTA, a corporation formed under the laws of North Carolina, and that there was no separate corporate identity as between the two companies.  See *id.* ¶¶ 3, 22.  On July 23, 2002, Tidrow caused JTA to borrow $850,000 from a separate entity known as JTA Funding, Inc.

("JTA Funding"); Tidrow secured those funds with a personal guaranty and a first lien, in favor of JTA Funding, on all of JTA's assets. *Id.* ¶ 25. On August 23, 2002, Tidrow drafted a letter to Edwards stating that JTA would pay the sums owed to Edwards under the convertible debentures. *Id.* ¶ 27.

On October 31, 2002, the defendant Atlas Telecom Services - USA, Inc. ("ATS") was incorporated under the laws of the state of Delaware. Philippe Bednerek ("Bednerek") and Ernesto Calzado ("Calzado") were named as officers thereof. *Id.* ¶¶ 2, 29. ATS is a subsidiary corporation of Atlas Telecom Networks, Inc. ("ATN"), also incorporated in Delaware. *Id.* ¶ 7; see *id.* ¶¶ 55, 57. From December 2002 through February 2003, ATN loaned approximately $662,000 to JTA. *Id.* ¶¶ 31-33. On June 23, 2003, JTA and ATS entered into an asset purchase agreement whereby ATS acquired substantially all of JTA's assets. *Id.* ¶ 35. The main assets of JTA transferred to ATS were various government contracts with an estimated value of $50 million to $200 million. *Id.* ¶ 26. On December 31, 2003, the shareholders of JTA dissolved the corporation. *Id.* ¶ 38.

The plaintiff alleges claims of (1) securities fraud against JTA and Barnes; (2) fraudulent transfer, fraudulent concealment, and conspiracy to defraud against ATS, ATN, JTA, Tidrow, Barnes, Bednerek, and Calzado; (3) unjust enrichment against ATS, ATN, Tidrow, and Barnes; (4) breach of contract and common law

fraud against ATS and JTA; and (5) breach of fiduciary duties against Tidrow and Barnes. The plaintiff also seeks declaratory relief and appointment of a receiver.

The case was originally filed in the United States District Court for the Eastern District of Texas on January 26, 2005, naming only one defendant, ATS. *See* Docket Sheet; Plaintiff's Original Complaint (docket entry 1). The original complaint was amended on April 29, 2005, naming as defendants ATS, ATN, JTA, Tidrow, Barnes, Bednerek, Calzado, and Feiner. Docket Sheet; Plaintiff's Amended Original Petition (docket entry 16). The onslaught of motions to dismiss came in two waves -- the first on May 25, 2005 (docket entries 20-22), the second on July 25, 2005 (docket entries 39-48). On March 27, 2006, Judge Ron Clark of the Eastern District granted the defendants' motion to transfer venue to this court and dismissed as moot all then pending motions to dismiss. Order Dismissing Defendant Lenny Feiner and Granting Defendants John Tidrow's, Atlas Telecom Services - USA, Inc.'s, Sandy Barnes', Atlas Telecom Networks, Inc.'s, Philippe Bednerek's and Ernesto Calzado's Motions to Dismiss for Improper Venue (docket entry 66). In the same order, Judge Clark dismissed Feiner from the suit due to the plaintiff's failure to perfect service on Feiner. *Id.* at 1-2. Upon transfer, this court issued three separate orders granting motions to re-urge the various motions to dismiss, responses, replies, and supplements thereto (docket entries 75, 77, and 81) so that all motions are now live and ripe for decision.

- 5 -

## II. ANALYSIS

Before embarking on the modicum of legal analysis required for this memorandum order and opinion to resolve the fundamental issue presented, the court initially expresses its disappointment and frustration with the performance of counsel in this case.[2]  From the word "go" (or more literally from the words "Comes now Edwards & Associates Inc."),[3] this case (and consequently the court) have been entangled in the Gordian knot of sloppy pleadings, deficient motions, and inept briefing.  This court is not in the habit of openly criticizing counsel who appear before it and does not lightly do so here.  To date both this court, as well as the court in the Eastern District, have expended a considerable amount of the judiciary's scarce resources in an effort to resolve issues that should have been handled (or at least addressed) by counsel.  Henceforth, the court will no longer do the homework of these litigants.  If counsel cannot argue competently and diligently on behalf of their clients, the court is unwilling to take valuable resources away from other cases by giving this case more time and attention than it deserves.

---

[2]     Out of a desire to avoid implicating the innocent, the court notes that the defendants, by order of this court (docket entry 71), added local counsel on June 7, 2006 (docket entry 73).  All of the pleadings, motions, briefs, and supplements referred to herein predate her involvement in the case.  Thus, the discussion herein should not be seen as a reflection upon her.

[3]     As addressed below, "Edwards & Associates, Inc." is not a registered corporation under Texas state law or any other state's laws.  Rather, "Edwards & Associates, Inc." is an assumed name of National Architectural Products Company.  12(b)(1) Response at 12.

The documents before the court are replete with errors.  In an effort (one presumes) to keep the court on its toes, counsel indulged themselves in a variety of mistakes.  It was not enough for them to butcher their legal analysis and contort the generally accepted rules of legal citation; in their quest for dominion over the substandard, counsel aimed and struck ferociously against the English language as a whole.  Errant phrases[4] and typographical errors[5] abound.

If these were the only errors, the court would have slogged through the motions, as it often faces such imprecise writing when dealing with *pro se* litigants.  Unsurprisingly though, the errors extend to the manner in which counsel present[6] and support their legal arguments[7] as well as to the analytical path through which they

---

[4]     *See* 12(b)(1) Response at 12 ("Defendants correctly assert that the jurisdiction of an action for purposes of diversity are [sic] determined at the time that the action is filed.  See *Teal Energy USA v*[.] *GT Inc.*, 369 F.3d 873 (5th Cir. 2004), *nor do subsequent events*, see *De Aguilar v*[.] *Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995).") (emphasis added).

[5]     *See* ATS 12(b)(6) Supplement at 2 (after incorporating by reference arguments from another defendant's motion to dismiss, stating on behalf of *ATS* that "Because Plaintiff did not state a claim on which relief can be granted, the Court should dismiss the suit against *Tidrow*.") (emphasis added).

[6]     *See, e.g.*, Plaintiff's Response to Motion to Dismiss Filed by Defendant Atlas Telecom Network Inc.[,] Sandy Barnes, Philippe Bednerek, and Ernesto Calzado for Lack of Personal Jurisdiction ("12(b)(2) Multiple Response") at 9 (citing to the entire 107-page deposition of Tidrow, without page and line references, for the proposition that ATN, Barnes, Bednerek, and Calzado had sufficient minimum contacts with the state of Texas to confer personal jurisdiction).

[7]     *See, e.g.*, Defendant Atlas Telecom Services - USA Inc.'s Reply to
(continued...)

endeavor to reach their legal conclusions.  The court considered the possibility of denying all of the pending motions due to their deficiencies, but to do so would be to reward plaintiff's counsel despite (or perhaps because of) his failings.  The court likewise considered the possibility of dismissing the entire litigation, but defense counsel is similarly undeserving of such a windfall.  Instead, with a firm wag of the finger, the court orders the proverbial slate wiped clean and offers counsel the opportunity to start anew, providing their clients with the caliber of representation they deserve and showing this court the respect it is due.

The thirteen motions and supplements thereto can be neatly grouped into three categories:  a motion to dismiss for lack of subject matter jurisdiction, motions to dismiss for lack of personal jurisdiction, and motions to dismiss for failure to state a claim.  While the analysis necessary for the disposition of these motions ends at the subject matter jurisdiction inquiry, the court will strive to provide some guidance to counsel, of both a specific and a general nature, to avoid a repetition of the fiasco the present posture of this case presents.

---

[7](...continued)
Plaintiff's Response to Motion to Dismiss for Lack of Personal Jurisdiction ("ATS 12(b)(2) Reply") at 2 (stating "[t]he de facto merger doctrine has been declined by the Texas Supreme Court" without citation to any case law in support of this proposition).  Of course, on research by the court it was easily discovered that the doctrine of *de facto* merger was abolished by the Texas legislature.  *See* TEX. BUS. CORP. ACT. ANN. art. 5.10(B) (Vernon 2003).

A. <u>Subject Matter Jurisdiction</u>

A party attempting to invoke the jurisdiction of the federal courts bears the burden of establishing that jurisdiction. *Langley v. Jackson State University*, 14 F.3d 1070, 1073 (5th Cir.), *cert. denied*, 513 U.S. 811 (1994). There are two principal bases upon which a district court may exercise subject matter jurisdiction: (1) the existence of a federal question and (2) complete diversity of citizenship among the parties. *See* 28 U.S.C. §§ 1331, 1332. The court can properly exercise jurisdiction on the basis of diversity of citizenship if the parties are of completely diverse citizenship and the case involves an amount in controversy of at least $75,000. *See* 28 U.S.C. §1332(a). District courts have federal question jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331; *Frank v. Bear Stearns & Company*, 128 F.3d 919, 922 (5th Cir. 1997). In its amended petition, the plaintiff asserts that this court has subject matter jurisdiction based on diversity of citizenship. Here, the amount in controversy is not contested; instead, the defendants argue that the plaintiff has not alleged complete diversity. *See* 12(b)(1) Motion ¶ 8.

The problem with the plaintiff's assertion of jurisdiction is apparent on the face of the complaint: the amended petition itself shows that diversity of citizenship is not complete. The plaintiff's assertion of diversity of citizenship jurisdiction is deficient for at least two reasons. First, the amended petition names Feiner as a

defendant in this action.  According to the petition, both Feiner and the plaintiff are citizens of the State of Texas.  *See* Amended Petition ¶¶ 1, 6.  The court is dumbfounded by the audacity (or carelessness) of plaintiff's counsel to then allege that "[t]he parties herein are completely diversified."  *Id.* ¶ 12.  Second, the plaintiff failed to plead sufficiently the citizenship of both itself and the three corporate defendants -- ATS, ATN, and JTA.  See *id.* ¶¶ 1-3, 7.  As to Edwards, JTA, and ATS, the plaintiff properly pleaded the state of incorporation as one state of citizenship, see *id.* ¶¶ 1-3, but it never alleged in which state these corporate entities have their principal place of business.  *See* 28 U.S.C. § 1332(c)(1).  With regard to ATN, the plaintiff pleaded the state of incorporation and the state in which ATN is *headquartered*.  Amended Petition ¶ 7.  While the state in which a corporation is "headquartered" may indeed be the corporation's principal place of business, such an inference is not axiomatic.  See *Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 876-77 (5th Cir. 2004) (affirming the district court's holding that the plaintiff's principal place of business was the "place of activity," not the situs of its corporate headquarters).  How an experienced litigator can so utterly fail to plead such a simple matter as state of citizenship while attempting to invoke subject matter jurisdiction is both befuddling and disappointing.

To his credit, plaintiff's counsel attempted to turn things around by conceding, in response to the defendants' Rule 12(b)(1) motion, that diversity of citizenship

jurisdiction had not been properly pleaded.[8]  *See* 12(b)(1) Response at 12.  Both he

and defense counsel then attempted to lure the court into an examination of federal

question and supplemental jurisdiction.[9]  However, the federal question analysis --

---

[8]       Despite his efforts, the confusion of plaintiff's counsel is evinced in his response to the Rule 12(b)(1) motion wherein he asserts that "Plaintiff's [sic] have [sic] asserted jurisdiction under 28 U.S.C. § 1331."  12(b)(1) Response at 10.  The record, however, as of the date of that response, is devoid of any reference by the plaintiff to subject matter jurisdiction under § 1331.

[9]       The basis of the plaintiff's argument is that a federal claim -- securities fraud -- has been raised against three of the eight defendants; thus the court has jurisdiction over that claim and those defendants pursuant to 28 U.S.C. § 1331 and the court should exercise supplemental jurisdiction over the remaining state law claims and parties.  Were these two issues the only ones in need of resolution to determine whether subject matter jurisdiction exists, the court would dutifully decide the question in spite of the woefully thin arguments as to why the state claims are, or are not, "so related" to the federal claim as to warrant supplemental jurisdiction. Instead, the defendants ask the court to examine the securities fraud claim under Rule 12(b)(1) in connection with a statute of limitations defense.

In making this limitations argument, the defendants skipped the necessary analysis stemming from *Holland/Blue Streak v. Barthelemy*, 849 F.2d 987 (5th Cir. 1988), which instructs district courts to find federal question jurisdiction lacking "[o]nly if the federal statute . . . invoked is clearly immaterial and is invoked solely for the purpose of obtaining jurisdiction or if the claim is wholly insubstantial and frivolous . . .".  *Id.* at 989.  This court could have engaged in a protracted analysis devoid of counsels' input with regard to the applicability of *Holland/Blue Streak*; the issue of whether the running of the statute of limitations creates an "insubstantial" and "frivolous" claim; and whether the requisite showing by the defendants necessary to prevail on such a claim has been met.  However, the court concluded that answering these questions would only present more issues.

In particular, the court would then be obliged to determine the effect of section 804 of the Sarbanes-Oxley Act of 2002 on the specifically enumerated statutes of limitation found in the securities act.  To their credit, counsel on both sides presented to the court some form of "argument" about what statute of limitations they perceive to be applicable, but regrettably, neither argument was dispositive of the issue or even led the court to useful precedents.  Plaintiff's counsel

(continued...)

- 11 -

specifically the defendants' argument that the sole federal claim is barred by the applicable statute of limitations -- presents this court with more questions than answers.  While it may indeed be necessary to consider the applicability of section 804 of the Sarbanes-Oxley Act before this case is over, the court is unwilling to go there alone.

Though the amended petition, as pleaded, is insufficient to invoke subject matter jurisdiction under 28 U.S.C. § 1332, the court -- after a tedious examination of the voluminous motions and documents submitted -- suspects that it may have subject matter jurisdiction over this case based on diversity of citizenship.  Feiner is no longer a party to this suit.  A district court can obtain subject matter jurisdiction based on diversity of citizenship through the dismissal of a non-necessary, non-diverse party.  *Aetna Casualty & Surety Company v. Hillman*, 796 F.2d 770, 774 (5th

---

[9](...continued)
devotes a solitary paragraph to this issue in which he fails to direct the court to any binding precedent and mercilessly cites the court to an unreported portion of the Enron Securities Litigation without providing either a civil action number (for the court to locate the particular opinion) or a pinpoint citation (for the court to locate the relevant portions of this fifty-page opinion).  *See* 12(b)(1) Response at 13-14.  Not to be outdone by his counterpart, defense counsel uselessly points out to the court that "it is not decided that § 804 applies to the judicially implied causes of action under § 10(b)" and then abandons his argument as to why the shorter statute of limitations is applicable.  Instead, he invites the court, on a Rule 12(b)(1) motion, to enter into a factual analysis as to when the plaintiff was on inquiry notice so as to trigger the running of the statute of limitations.  *See* Reply to Response to Motion to Dismiss for Lack of Subject Matter Jurisdiction by Defendants Atlas - Telecom Services - USA, Inc., John Tidrow, John Tidrow and Associates, Inc., Atlas Telecom Networks, Inc., Philippe Bednerek, Ernesto Calzado and Sandy Barnes and Memorandum of Law in Support Thereof ¶¶ 5-12.

Cir. 1986).  Were the plaintiff to amend its pleading to assert both the state of

incorporation and the principal place of business of each of the corporate parties,

complete diversity of citizenship may very well manifest itself.[10]

Therefore, the court orders the plaintiff to amend its first amended petition.[11]

In this second amended petition [complaint], the plaintiff shall:  (1) identify itself

under its correct legal name;[12]  (2) allege both the state of incorporation and the

---

[10]     Of course, if the court's surmise that it has diversity of citizenship
jurisdiction turns out to be erroneous, the plaintiff can take the opportunity to plead,
for the first time, that this court has subject matter jurisdiction based on 28 U.S.C.
§ 1331.

[11]     The plaintiff's pleading in this court is properly called a complaint.  F.R.
CIV. P. 3 ("A civil action is commenced by filing a complaint with the court.") and
F.R. CIV. P. 7(a) ("Pleadings.  There shall be a complaint and an answer . . . .").

[12]     Though not more fully addressed in this opinion, the plaintiff's decision
(or error) to identify itself as "Edwards & Associates, Inc.," rather than its actual legal
name, presented additional quandaries for the court (which, of course, were not fully
briefed by either side).  The defendant raised this issue as a challenge to the plaintiff's
standing in this case; however, it is more aptly described a challenge to the plaintiff's
capacity to sue.  See *Friends of the Earth, Inc. v. Chevron Chemical Company*, 129 F.3d
826, 829 (5th Cir. 1997) (Barksdale, J., dissenting).  Under FED. R. CIV. P. 17(b), a
corporation's capacity to sue or be sued is determined first by the state of
incorporation and second by the forum state in which the federal court is situated.
See also *Miner v. Punch*, 838 F.2d 1407, 1409-10 (5th Cir. 1988).  In the instant
case, either inquiry under Rule 17(b) results in the application of Texas law.  Texas
civil procedure provides that a corporation may sue or be sued under an assumed
name, "but on a motion by any party or on the court's own motion the true name
may be substituted."  TEX. R. CIV. P. 28; see also *Perez v. L-3 Communications
Corporation*, No. EP-06-CA-22-PRM, 2006 WL 1788182, at *4 n. 2 (W.D. Tex.
June 26, 2006) (discussing the potential application of TEX. R. CIV. P. 28 to a
corporate defendant).  On this order to amend, the court exercises its authority to
require the plaintiff to substitute its true legal name in the amended petition

(continued...)

principal place of business of all corporate parties; and (3) allege all bases for this

court's subject matter jurisdiction over the case.  Such amendment of the plaintiff's

petition [complaint] will make all pending motions to dismiss moot, and they are

therefore denied.  The defendants are granted leave, however, to reassert any

appropriate pre-answer motions following the filing and service of the amended

petition [complaint].

B. <u>General Requirements and Expectations</u>
<u>on Future Motions and Briefs</u>

The defendants are expressly not permitted to "re-urge" their motions to

dismiss, briefs in support thereof, or replies to the plaintiff's responses, and the

plaintiff is likewise prohibited from "re-urging" its responses.  The motions, the briefs

in support thereof, the response briefs, and the reply briefs shall all be drafted anew,

and counsel are warned not to submit filings that resemble the barrage of incoherent

and hastily drafted arguments which are the subject of this memorandum opinion

and order.

By right of course, each defendant, despite having common representation,

may submit its own motion to dismiss separately (as was done with the previous Rule

12(b)(2) and (b)(6) motions); however, the parties are expressly prohibited from

---

[12](...continued)
[complaint].  However, the plaintiff may identify itself as "National Architectural
Products Company d/b/a Edwards & Associates, Inc." and after the initial
identification may refer to itself in its pleadings, motions, or brief in any convenient
and unambiguous manner it chooses.

"incorporating by reference" all or portions of one or more of their co-defendants'

motions. Each motion must be complete in itself and must relate only to the

defendant(s) on whose behalf it is filed. Additionally, as to plaintiff's counsel, the

court requests that he adopt the format of the defendants' motions as much as

possible without compromising the effectiveness of his advocacy. That is, if the

defendants submit individual motions, the court requests (though does not mandate)

that the plaintiff file either separate responses or a consolidated response with

separate parts responding to each defendant's motion individually.[13]

The parties are also directed to the local rules regarding the inclusion of

discovery materials on such pretrial motions. First, LOCAL RULE OF CIVIL PROCEDURE

5.2(d) instructs that "[w]hen discovery materials are necessary for consideration of a

pretrial motion, a party shall file *only* the portions of discovery on which that party

relies to support or oppose the motion" (emphasis supplied). To be clear, the parties

shall submit neither extraneous materials which are irrelevant to their argument nor

lengthy depositions to which the brief makes no pinpoint references (*i.e.*, page and

line numbers). Second, counsel are directed to LOCAL RULE OF CIVIL PROCEDURE

7.1(i) regarding the manner in which documentary evidence should be presented -- as

---

[13]     The present response to the defendants' Rule 12(b)(2) motions is indecipherable. The court is unable to determine which factual and/or legal assertions are being offered to support personal jurisdiction against which defendant.

an appendix.[14]  Finally, counsel are reminded of the undersigned's requirement that a

courtesy copy of all filings be delivered to these chambers.[15]  *See* Standing Order

Designating Case for Enrollment in the Electronic Case Files "ECF" System at 3-4.

C.  <u>Personal Jurisdiction</u>

All of the pending motions to dismiss for lack of personal jurisdiction are

dismissed as moot in light of the second amended petition [complaint] to be filed by

the plaintiff.  However, the defendants shall have the right to reassert their claims of

lack of personal jurisdiction.  Admittedly, what follows can only be characterized as

*obiter dictum*, as the denial of the motion to dismiss for lack of personal jurisdiction

renders non-binding this section of the memorandum order and opinion.  However,

based on the quality of the previous motions, and briefs in support or opposition, the

court believes it would be naive to assume that all of its concerns relating to the

existence or not of personal jurisdiction will be answered by counsel.  Thus the court

---

[14]     While the court's emphasis of these particular rules stem from
deficiencies already noted, counsel should not assume that these are the only LOCAL
RULES by which they must abide.  They are reminded that all LOCAL RULES are in full
force, and all filings must conform to those rules.

[15]     Attached to the courtesy copy, counsel must attach the electronic case
file ("ECF") transmission sheet evidencing that the contents of the courtesy copy
have also been submitted electronically.  *See* Standing Order Designating Case for
Enrollment in the Electronic Case Files "ECF" System at 4.

engages in a brief (but non-exhaustive) recital of questions that remain following its initial efforts to resolve these challenges.[16]

### 1. *ATS's Rule 12(b)(2) Motion*

The crux of the plaintiff's assertion of personal jurisdiction over ATS is that the court has personal jurisdiction over JTA (a legal conclusion which is undisputed in this case). According to the plaintiff, because JTA merged into ATS via a *de facto* merger, this court has personal jurisdiction over ATS as the successor corporation of JTA. *See* ATS 12(b)(2) Response at 7-8. In its reply, ATS argues that such merger could not have taken place because Texas does not recognize the doctrine of *de facto* merger. *See* ATS 12(b)(2) Reply. This court does not question the propositions that successor liability can create personal jurisdiction, *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653-55 (5th Cir. 2002), or that the Texas legislature has abandoned the doctrine of *de facto* merger, TEX. BUS. CORP. ACT ANN. art. 5.10 (Vernon's 2003). The issue to which the court wishes to draw the parties' attention, however, is this: which state's law should be applied to determine whether a *de facto* merger took place?

---

[16]     Though the defendants can by right submit their eventual motions to dismiss in any manner that complies with the FEDERAL and LOCAL RULES OF CIVIL PROCEDURE, the court suggests that it may be more efficient both for counsel and for the court if the defendants adopt the following groupings (whether in a single consolidated motion or in individual motions) when presenting any future Rule 12(b)(2) motions.

On its Rule 12(b)(2) motion, ATS seeks to apply Texas corporate law to determine whether JTA (a North Carolina corporation) merged into ATS (a Delaware corporation).  The court today is not ruling that Texas law is inapplicable; it is only pointing out this conflicts of law issue to the parties in the hope of gaining their aid in the analysis.  An ideal brief (either in support of or in opposition to the existence of personal jurisdiction) would conduct a conflicts of law analysis, determine what state's law is applicable, define the elements of the applicable state's laws, and then apply those elements to the facts of this case.

### 2. *Barnes' Rule 12(b)(2) Motion*

The court has struggled to understand the plaintiff's argument that this court has personal jurisdiction over Barnes.  As best the court can determine, the plaintiff's argument is this:  Barnes was an officer and director of JTA; Millennium was a Texas corporation; Millennium was the alter ego of JTA; therefore, the court has personal jurisdiction over Barnes.  *See* 12(b)(2) Multiple Response at 11-12.  Additionally, the plaintiff asserts that Barnes may have received financial compensation at some point from Millennium, and that that compensation was drawn on an account located in Texas.  *Id.* at 11.  While the plaintiff mindlessly "copied and pasted" the same two sentences regarding Barnes into three places within its response in opposition,[17] it

---

[17]     Defendant JTA was an alter ego of Millennium, and in fact pledged to pay the debts of Millennium to Plaintiff.  It has not

(continued...)

wholly fails to explain what contacts this defendant had with Texas as the forum state.

The court found itself with many factual questions that should have been addressed: what was Barnes' role with Millennium (the Texas corporation)? what was Barnes' role in the alleged fraudulent transactions? what contacts did those transactions have with the state of Texas (aside from the plaintiff residing in Texas)? There were also legal questions which permeated this motion: can an officer or director of a corporation be held personally liable for the alleged actions of his corporation (*i.e.*, is the corporate/fiduciary shield doctrine applicable)? can an officer or director of one corporation be held personally liable for the alleged actions of that corporation's alter ego?

--------

[17](...continued)
> been disputed that Defendant JTA had sufficient contacts with the State of Texas, as it raised money here, paid employees in JTA from the Millennium bank accounts (Millennium is a Texas Corporation), and had employees located in Texas.  Among the employees which were paid by Millennium (a Texas Corporation) was Defendant [Barnes]. Defendant Barnes was also an officer and director of Defendant JTA the alter ego of Millennium.

12(b)(2) Multiple Response at 9; see *id.* at 11, 12.

### 3. *Calzado and Bednerek's Rule 12(b)(2) Motion*

As best the court can understand, the plaintiff's argument for the assertion of personal jurisdiction over Calzado and Bednerek is as follows: Millennium is the alter ego of JTA; Calzado and Bednerek engaged in negotiations with JTA on behalf of their employer ATN; those negotiations led to the transfer of assets from JTA to ATS (a wholly owned subsidiary of ATN); therefore, the court has specific jurisdiction over Calzado and Bednerek. See *id.* at 12.

Again, the court was left with some of the same factual and legal questions as with Barnes: what were Calzado and Bednerek's roles in the alleged fraudulent transactions? what contacts did those transactions have with the state of Texas (aside from the plaintiff residing in Texas)? can an officer of a corporation be held personally liable for the alleged fraudulent conduct of his corporation? can an officer of one corporation be subjected to personal jurisdiction in the forum state on the basis that he transacted business with a second corporation which had an alter ego corporation incorporated in the forum state?

### 4. *ATN's Rule 12(b)(2) Motion*

It appears that the plaintiff makes two arguments to support its theory of personal jurisdiction over ATN.  First, it follows a path of reasoning parallel to the assertions regarding Bednerek and Calzado:  Millennium was the alter ego of JTA; ATN conducted business with JTA; therefore, personal jurisdiction exists over ATN.

- 20 -

See *id.* at 11-12.  The second argument is somewhat more obscure:  Millennium was the alter ego of JTA; JTA merged into ATS via a *de facto* merger; ATS is a wholly owned subsidiary of ATN; therefore, personal jurisdiction exists over ATN.  See *id.*

As to the plaintiff's first argument, the court is unsure what support exists for the proposition that when one corporation transacts business with a second corporation, which is not a resident of the forum state but which has an alter ego that is a resident of the forum state, the first corporation is subject to personal jurisdiction in the forum state.  With regard to the second argument, there are two overarching mixed questions of law and fact that must be addressed:  (1) did a *de facto* merger take place between ATS and JTA (see *supra* section II.C.1)? (2) can ATN, the parent corporation, be subject to personal jurisdiction in Texas solely on the basis that it has a subsidiary in Texas?

### D.  Failure to State a Claim

As with the previous section on personal jurisdiction, the court recognizes the non-binding nature of the comments included below, but in the interest of efficiency and justice, the court chooses to comment on these previously dismissed Rule 12(b)(6) motions.  As a general observation, the motions are replete with legal propositions that contain no citation to legal authority.[18]  The court exhorts counsel

---

[18]     As examples: "Plaintiff, however, did not allege a valid agreement that would make JTA liable to repay the funds loaned. . . .  Therefore, even if Plaintiff proves the allegations in the complaint, it cannot prove the elements necessary to

(continued...)

for all parties in drafting (and -- the court hopes -- in editing) their briefs to stop and ask themselves two questions at the end of each sentence: (1) have I made an assertion of law or fact in this sentence? and (2) if so, have I supported that assertion of law or fact with an *accurate pinpoint* citation to the applicable law or relevant section of the appendix?

Defense counsel asserts at various points that the plaintiff has failed to allege the requisite elements of various causes of action; often, however, counsel then fails to list what those elements are or (as is typical of these motions) fails to direct the court to any legal authority setting forth the elements of these claims. *See, e.g.*, JTA 12(b)(6) Motion ¶ 5 (stating "[t]here is no allegation sufficient to grant relief against JTA under . . . Count One" without providing any indication what the deficiency is); *id.* ¶ 6 (stating "[n]either the allegation in Count One . . . nor the Background allegations . . . specifically give notice as to how JTA is allegedly guilty of all elements required for relief to be granted under [15 U.S.C. §§ 77q(a) & 78j(b)]" without listing the requisite elements or citing to any legal authority).[19]

_____

[18](...continued)
state a claim for breach of contract." ATS 12(b)(6) Motion ¶ 6 (without providing a citation to any legal authority supporting the proposition that the plaintiff must allege a "valid" agreement to survive a Rule 12(b)(6) motion to dismiss); "An entity cannot conspire with itself." *Id.* ¶ 9 (referring to the alleged conspiracy between ATS and JTA but without citing legal authority for this proposition or for the proposition that a subsequent merger absolves a corporation of its prior conspiracy).

[19]     The court notes that in response to the various Rule 12(b)(6) motions,
(continued...)

III.  <u>CONCLUSION</u>

For the above stated reasons, the plaintiff shall amend its petition [complaint] to properly allege its correct legal name, the state(s) of citizenship of the corporate parties, and the basis for subject matter jurisdiction.  This second amended petition [complaint] shall be filed with the clerk and served upon the defendants within twenty (20) days from the date of this memorandum opinion and order.

All pending Rule 12 motions to dismiss are **DENIED** as moot.  The defendants shall have leave, however, to reassert their motions to dismiss for lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and (if necessary and appropriate) lack of subject matter jurisdiction.  The time to file such Rule 12 motions and/or to answer the complaint shall be governed by the FEDERAL RULES OF CIVIL PROCEDURE and the LOCAL RULES OF CIVIL PROCEDURE.

**SO ORDERED**.

January 4, 2007.

A. JOE FISH
CHIEF JUDGE

---

[19](...continued)
plaintiff's counsel began his trek towards redemption.  The court would be remiss not to laud his efforts as being the "most improved player" on the field.  Yet, however improved these responses may be, they are still lacking -- especially with regard to pinpoint citations.

- 23 -