UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL ARCHITECTURAL PRODUCTS CO. d/b/a EDWARDS & ASSOCIATES, INC., | ) ) ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff, | ) | |
| | ) | 3:06-CV-0751-G |
| VS. | ) | |
| | ) | **ECF** |
| ATLAS-TELECOM SERVICES - USA, INC., ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the court are:  (1) the motion of the defendant Sandy Barnes ("Barnes") to dismiss for lack of personal jurisdiction; (2) the motion of the defendant Atlas Telecom Networks, Inc. ("ATN") to dismiss for lack of personal jurisdiction; and (3) the amended motion of the defendants Atlas Telecom Services USA, Inc. ("ATS") and John Tidrow & Associates ("JTA") to dismiss for failure to state a claim upon which relief can be granted.  For the reasons stated herein, the motions to dismiss of Barnes and ATN are granted; the motion to dismiss of ATS and JTA is denied.

## I. <u>BACKGROUND</u>

This case arises from the purchase by the plaintiff National Architectural Products Company, d/b/a Edwards & Associates, Inc. ("Edwards" or "the plaintiff") of certain convertible debentures in Millennium Armor Corporation ("Millennium"), a corporation formed under the laws of the State of Texas.  Plaintiff's Second Amended Complaint ("Amended Complaint") ¶ 12; Amended Motion to Dismiss for Failure to State a Claim and Memorandum in Support Thereof on Behalf of Defendants Atlas Telecom Services USA, Inc. and John Tidrow and Associates at 6.  According to the amended complaint, representations were made by the defendants John Tidrow ("Tidrow"), an officer and director of both JTA and Millennium, that the funds from the debenture were to be used exclusively by Millennium for the development of bullet proof armor.  Amended Complaint ¶¶ 12, 13, 18.  The amended complaint alleges that the funds from the debenture were instead used by JTA.  *Id.* ¶ 13.  In April of 2002, JTA issued Edwards a guarantee on the debentures.  *Id.* ¶ 12.

Edwards avers that Millennium was the "alter ego" of JTA, a corporation formed under the laws of North Carolina, and that there was no separate corporate identity between the two companies.  See *id.* ¶ 13.  On October 31, 2002, ATS was incorporated under the laws of the state of Delaware.  *Id.* ¶ 22.  ATS is either a subsidiary or sibling corporation of ATN, also incorporated in Delaware.  *Id.* ¶¶ 6, 22; Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum in Support

Thereof on Behalf of Atlas Telecom Network, Inc. ("ATN Motion to Dismiss") ¶ 3. From December 2002 through February 2003, ATN loaned JTA approximately $662,000. *Id.* ¶ 24. On June 23, 2003, JTA and ATS entered into an asset purchase agreement whereby ATS acquired substantially all of JTA's assets. *Id.* ¶ 26. The transfer agreement stated that the transfer of assets was made to ATS in consideration of the debt owed to ATN. *Id.* Included in the transfer of assets was a contract between JTA and the General Services Administration. *Id.* ¶ 35. On December 31, 2003, the shareholders of JTA dissolved the corporation. *Id.* ¶ 34.

The plaintiff alleges claims of (1) securities fraud against JTA and Barnes; (2) fraudulent transfer, fraudulent concealment, and conspiracy to defraud against ATS, ATN, JTA, Tidrow, and Barnes; (3) unjust enrichment against ATS, ATN, Tidrow, and Barnes; (4) breach of contract and common law fraud against ATS and JTA; and (5) common law fraud against ATS and JTA. The plaintiff also seeks declaratory relief and appointment of a receiver.

The case was originally filed in the United States District Court for the Eastern District of Texas on January 26, 2005, naming only one defendant, ATS. *See* Docket Sheet; Plaintiff's Original Complaint. The original complaint was amended on April 29, 2005, naming as defendants ATS, ATN, JTA, Tidrow, Barnes, Phillip Bednerek, Earnest Calzado, and Lenny Feiner. *See* Docket Sheet; Plaintiff's Amended Original Petition. An onslaught of motions to dismiss ensued. On March 27, 2006,

Judge Ron Clark of the Eastern District granted the defendants' motion to transfer venue to this court and dismissed as moot all then pending motions to dismiss. Order Dismissing Defendant Lenny Feiner and Granting Defendants John Tidrow's, Atlas Telecom Services - USA, Inc.'s, Sandy Barnes', Atlas Telecom Networks, Inc.'s, Philippe Bednerek's and Ernesto Calzado's Motions to Dismiss for Improper Venue. Upon transfer, this court issued three separate orders granting motions to re-urge the various motions to dismiss, responses, replies, and supplements thereto so that all motions were live and ripe for decision.

In a memorandum opinion and order dated January 4, 2007, this court resolved all of the pending motions to dismiss. Specifically, the court ordered the plaintiff to amend its complaint to properly allege its correct legal name, the state(s) of citizenship of the corporate parties, and the basis for subject matter jurisdiction. Memorandum Opinion and Order ("Memorandum Opinion"), No. 3:06-CV-751-G, 2007 WL 30256, at *8 (N.D. Tex. Jan. 4, 2007) (Fish, C.J.). The court also granted the defendants leave to reassert their motions to dismiss. *Id.* On January 19, 2007, the plaintiff complied with this court's order and filed its second amended complaint; the instant motions to dismiss followed.

## II. ANALYSIS

Unfortunately, this litigation is no further along than it was when the court's memorandum opinion was issued on January 4, 2007. As was true then, the court

cannot begin its legal analysis without first expressing its disappointment at counsel's inability to comply with the court's expectations.  While the briefing on this second round of motions to dismiss represents a marked improvement from the previous set of briefs, which were often rambling and incomprehensible, counsel continue to breach even the simplest of local rules.  Whereas the memorandum opinion wiped "the proverbial slate . . . clean and offer[ed] counsel the opportunity to start anew", *id.* at *3, their continuing inability to comply with the rules of this court comes with consequences.

In footnote 14 of the memorandum opinion, this court, after specifically directing the parties to LOCAL RULES OF CIVIL PROCEDURE 5.2(d) and 7.1(i), reminded counsel that *all* LOCAL RULES OF CIVIL PROCEDURE were applicable in this case and that strict compliance with those rules was expected.  The court assumed (naively so, in retrospect) that such an order from this court would persuade counsel to comply with the LOCAL RULES (or, at a minimum, would compel counsel to read the LOCAL RULES).  Unhappily, that assumption was apparently unfounded.

LOCAL RULE OF CIVIL PROCEDURE 7.2 sets forth several requirements for the form and length of briefs submitted to the courts of the Northern District.  Subsection (c) of the rule, entitled "Length," reads, "A brief must not exceed 25 pages (excluding the table of contents and table of authorities).  *A reply brief must not exceed 10 pages*.  Permission to file a brief in excess of these page limitations will be granted

by the presiding judge only for extraordinary and compelling reasons." LOCAL RULE OF CIVIL PROCEDURE 7.2(c) (emphasis added). The court considers itself to be more generous than the rule implies when it comes to granting leave for the filing of a brief in excess of the page limits. That generosity, of course, comes with a small caveat -- *the party must first seek permission from the court*. Despite the clarity and simplicity of Local Rule 7.2(c), counsel for the defense grossly exceeded the 10-page limit in two of their three reply briefs. The reply of Sandy Barnes to the plaintiff's response to her motion totals 21 pages, excluding the certificate of service; the reply of Atlas Telecom Network, Inc. to the plaintiff's response to its motion totals 16 pages, excluding the certificate of service.[1] Because defense counsel has exceeded the page limit for reply briefs without leave to do so, the court will consider only the information included in the first 10 pages of the respective replies.

LOCAL RULE OF CIVIL PROCEDURE 7.2(e) dictates the manner in which citations to an accompanying appendix must be made. It reads, "If a party's motion or response is accompanied by an appendix, the party's brief must include citations to each page of the appendix that supports each assertion that the party makes

---

[1]      Of course, even if the court had granted permission for defense counsel to file such lengthy reply briefs, the briefs still do not meet the requirement of Rule 7.2. *See* LOCAL RULE OF CIVIL PROCEDURE 7.2(d):  "A brief in excess of 10 pages must contain: (1) a table of contents . . .; and (2) an alphabetically arranged table of cases, statutes, and other authorities . . .". *Id.*  In fact, of the five briefs submitted by defense counsel which were in excess of 10 pages, none included a table of contents or table of authorities.

concerning any documentary or non-documentary evidence on which the party relies to support or oppose the motion."  While plaintiff's counsel has spared the court the voluminous appendices filed with the first round of motions to dismiss, he continues to ignore how to properly use an appendix.  In the earlier memorandum opinion this court *repeatedly* ordered the parties to make pinpoint citations (*i.e.*, citations to specific page numbers) to their documentary evidence.  *See* Memorandum Opinion, 2007 WL 30256, at *4 n.9, 5, 8 n.19.[2]  Yet despite these repeated admonitions, plaintiff's counsel managed to file three response briefs -- totaling 41 pages of text -- without using a single pinpoint citation to the accompanying appendices (which total 193 pages).  There is no affirmative duty on this court to sift through the nearly 200 pages of appendices in search of facts that support the plaintiff's legal argument.  Cf. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996) (F.R. CIV. P. 56 "does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's position").  Thus, in the absence of citations to the appendix necessary to comply with Rule 7.2(e), the court will not consider the information included in the appendices.

---

[2]        "The court exhorts counsel for all parties in drafting (and -- the court hopes -- in editing) their briefs to stop and ask themselves two questions at the end of each sentence: (1) have I made an assertion of . . . fact in this sentence? and (2) if so, have I supported that assertion of . . . fact with an accurate pinpoint citation to the . . . relevant section of the appendix?"  Memorandum Opinion, 2007 WL 30256, at *8.

LOCAL RULE OF CIVIL PROCEDURE 7.1(i) sets forth the requirements for an

appendix.  In pertinent part, it reads:

> (4) Each page of the appendix must be numbered legibly in
> the lower, right-hand corner.  The first page must be
> numbered as "1" and succeeding pages must be numbered
> sequentially through the last page of the entire appendix
> (*i.e.*, the numbering system must not re-start with each
> succeeding document in the appendix).

LOCAL RULE OF CIVIL PROCEDURE 7.1(i).  Counsel for the plaintiff chose instead to

engage in sporadic (though at times sequential) numbering of his appendices.[3]  This

failure further buttresses the court's determination not to consider the plaintiff's

appendices.

Finally, the court notes that the only response filed by the plaintiff to ATN's

motion to dismiss for failure to state a claim is the original response filed by Edwards

on February 28, 2007.  Following the filing of that response, the plaintiff filed a

motion for leave to file an amended response.  On March 30, 2007, the court granted

the motion for leave to file an amended response and ordered the plaintiff to

"electronically file its response no later than April 3, 2007."  Order, Mar. 30, 2007.

To date, no amended response has been filed.  Accordingly, the court will consider

only the original February 28 response to the motion to dismiss.

---

[3]     Of course, had plaintiff's counsel made even a single pinpoint citation to
any of the 193 pages located in the appendices, he would have discovered the error.

With the record now clear as to what information the court will consider in making its legal analysis, the analysis will proceed.

### A. Motion to Dismiss for Lack of Personal Jurisdiction

#### 1. *The Factual Standard:  A* Prima Facie *Case*

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident.  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999).  If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet his burden by presenting a *prima facie* case for personal jurisdiction.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.  In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods.  *Allred v. Moore & Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

2. *The Legal Standard*

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction. *Id.* Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*, 20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq.* (Vernon 1997) (Texas long-arm statute).

3.  Due Process Requirements

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a non-resident defendant:  (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on his part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state.  *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign."  *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

a.  *Minimum contacts*

To establish minimum contacts with the forum, a nonresident defendant must do some act by which he "purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement.  *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v.*

*Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84 (1978); *Hanson*, 357 U.S. at 253).  In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum.  *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction.  Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard.  *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted).  "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'"  *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987).  General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts.  *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry -- "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spaceman*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982);

- 13 -

see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

To exercise specific jurisdiction, the court must examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice.  See *Holt Oil*, 801 F.2d at 777.  The Fifth Circuit has held that when a party directs purposeful, tortious activity towards a particular forum, he should anticipate being haled into court in that forum.  See *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 547 (5th Cir. 1985) (defendant corporate officer accused of fraud had sufficient contacts as he engaged in correspondence with plaintiff's forum, phoned plaintiff, and visited forum to negotiate); *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 333-34 (5th Cir. 1982) (single defamatory phone call sufficient to create personal jurisdiction), *cert. denied*, 460 U.S. 1023 (1983); *Union Carbide Corporation v. UGI Corporation*, 731 F.2d 1186, 1189-90 (5th Cir. 1984) (out of state acts giving rise to tortious injury in forum state enough to warrant personal jurisdiction).

b. *Fair play and substantial justice*

The due process inquiry limits the court's power to exercise personal jurisdiction over a nonresident if the exercise of jurisdiction under the circumstances would offend "traditional notions of fair play and substantial justice."  *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  In

- 14 -

determining whether the exercise of jurisdiction violates traditional notions of fair

play and substantial justice, the court evaluates the following factors:  (1) the burden

on the defendant by having to litigate in the forum; (2) the forum state's interests in

the lawsuit; (3) the plaintiff's interests in convenient and effective relief; (4) the

judicial system's interest in efficient resolution of controversies; and (5) the shared

interest of states in furthering fundamental social policies.  *Wien Air Alaska, Inc.*, 195

F.3d at 215 (citing *Ruston Gas Turbines, Inc. v. Donaldson Company, Inc.*, 9 F.3d 415,

421 (5th Cir. 1993)); *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286,

292 (1980).  It is the defendant's burden to show that, in light of these factors,

conducting litigation in this court would be "so gravely difficult and inconvenient"

that he would be at a "severe disadvantage" in comparison to the plaintiff.  *Burger

King*, 471 U.S. at 478 (citations omitted).

### 4.  *Barnes' Rule 12(b)(2) Motion to Dismiss*

Barnes alleges that this court does not have personal jurisdiction over her and

thus she must be dismissed from the case.  The plaintiff's theory of personal

jurisdiction over Barnes is two-fold.  First, Edwards avers that Barnes was an

officer/employee of Millennium, a Texas corporation with its principal place of

business in Texas; thus, sufficient minimum contacts exists to exercise personal

jurisdiction over her.  The court finds this argument to be unpersuasive.  That Barnes

was an employee or officer of a Texas corporation is insufficient without more to

establish minimum contacts.  See *Compaq Computer Corporation v. Ergonome Inc.*, 387 F.3d 403, 412 n.7 (5th Cir. 2004), *cert. denied*, 544 U.S. 962 (2005); *Davey v. Shaw*, __ S.W.3d __, 2007 WL 1532727, at *8 (Tex. App.--Dallas May 24, 2007) ("Jurisdiction over an individual generally cannot be based on jurisdiction over a corporation with which he is associated unless the corporation is the alter ego of the individual.").  The second theory regarding personal jurisdiction over Barnes, while still unconvincing, requires more attention.

The plaintiff alleges that because the effects of Barnes' fraudulent or tortious activity resulted in an injury within the State of Texas, personal jurisdiction attaches. Barnes' activities outside Texas are insufficient to establish the necessary minimum contacts.  There is no argument before the court that Barnes ever directed fraudulent communications towards Texas.  In fact, there is no indication that Barnes had any direct contact with the plaintiff, in Texas or any other state.  Instead, Edwards entire basis for its cause of action against Barnes is that she, while acting as a director of JTA, signed a novation agreement with the GSA that contained a fraudulent statement and caused JTA to enter into a fraudulent sale of assets.  To the extent that the claims against Barnes relate to Texas, they do so only through the "mere fortuity" that Edwards happens to be a resident of Texas.  See *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. App'x 662, 666 (5th Cir. 2004); see also *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir. 1996) ("In determining where the

injury occurred for jurisdictional purposes, actual injury must be distinguished from
its resultant consequences, such as . . . economic effects . . . that often stem from the
actual injury.  Recognizing that such collateral consequences may be far-reaching
(particularly in a commercial tort situation such as the one before us), our precedent
holds that consequences stemming from the actual tort injury do not confer personal
jurisdiction at the site or sites where such consequences happen to occur.").

Because the court finds that Edwards has not met its burden in establishing
minimum contacts between Barnes and the state of Texas, the court need not go any
further with the due process analysis.  Thus, the claims against Barnes are dismissed
under Rule 12(b)(2) for lack of personal jurisdiction.

### 5. *ATN's Rule 12(b)(2) Motion to Dismiss*

The plaintiff's theory of personal jurisdiction over ATN is similarly two-fold:
one is based on Edwards' conspiracy claim against the defendants; the second is based
on the theory that ATN and ATS are alter egos of one another.  Edwards' conspiracy
based personal jurisdiction theory argues that ATN, ATS, JTA, and Tidrow were all
members of a conspiracy to defraud the plaintiff.  ATN, a creditor of JTA, agreed to
forgive the debt owed to it by JTA in exchange for JTA transferring substantially all of
its assets to ATS, a subsidiary or sibling of ATN.  *See* Plaintiff National Architectural
Products Co., D/B/A/ Edwards & Associates Inc.'s Response to Motion to Dismiss for
Lack of Personal Jurisdiction Filed on Behalf of Atlas Telecom Network, Inc.

- 17 -

("Response to ATN Motion to Dismiss") ¶¶ 29-30.  Edwards avers that because this

court has personal jurisdiction over JTA and Tidrow -- a legal conclusion not in

dispute -- the court also has personal jurisdiction over the other coconspirators.  *Id.*

While the plaintiff is correct that in some instances the court can obtain

personal jurisdiction over a defendant as a result of its involvement in a conspiracy,

see *Delta Brands Inc. v. Danieli Corporation*, 99 Fed. App'x 1, 6 (5th Cir. 2004), it does

not necessarily follow that the personal jurisdiction over one conspirator may be

imputed to another coconspirator.  Fifth Circuit precedent states that to establish

personal jurisdiction over a defendant-conspirator, the plaintiff must allege either:

(1) that the *conspiracy* was related to or arose out of the defendant-conspirator's

contacts with the forum state; or (2) that the *actions* of the defendant-conspirator

were related to or arose out of the defendant-conspirator's contacts with the forum

state.  *Id.* ("To establish its *prima facie* case of specific personal jurisdiction, [the

plaintiff] was required to demonstrate that [the defendant] individually, and not as

part of the conspiracy, had minimum contacts with Texas.  Thus, [the plaintiff] was

required to show that either the alleged conspiracy or [the defendant's] alleged

misrepresentations were related to or arose out of [the defendant's] contacts with

Texas.").  Neither is present here.  All that the plaintiff has alleged is that a

conspiracy existed among the defendants and that the effect of that conspiracy was

felt in Texas.  As best the court can determine, all contacts by Tidrow and JTA with

the forum state occurred before ATN's alleged involvement in the conspiracy. Though the plaintiff alleges that the effects of the conspiracy to defraud were felt in Texas, there is absolutely no allegation that the activities of the conspiracy as a whole, let alone the activities of ATN, were directed at Texas.

The second theory of personal jurisdiction, the alter ego theory, requires little attention from the court. While the plaintiff is correct that the contacts of one corporation can be attributed to a parent, subsidiary, or sibling corporation if the two corporations are alter egos of one another, the Fifth Circuit has established a seven-prong test to determine whether personal jurisdiction can attach based on an alter ego theory. See *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338-39 (5th Cir. 1999). The factors for making such a determination are: "(1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations." *Id.* at 339 (citing *Hargrave v. Fiberboard Corporation*, 710 F.2d 1154, 1160 (5th Cir. 1983)). When the case involves a sibling corporation, the test is to be applied more rigorously than with a parent/subsidiary relationship. See *Dickson Marine Inc.*, 179 F.3d at 338-39. The burden of establishing the alter ego theory rests with the plaintiff. *Id.* at 338.

- 19 -

In the instant case, Edwards supplies the court with information regarding only one of the seven factors.  Edwards avers that ATS and ATN commingled their assets and that this single act amounts to the two corporations being alter egos of each other.  The court concludes that, without further information, Edwards has failed to meet its burden of establishing a *prima facie* case of personal jurisdiction under the alter ego theory.

Accordingly, because Edwards has failed to show that there are minimum contacts between ATN and Texas, the court grants ATN's motion to dismiss for lack of personal jurisdiction.

### B.  Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  There are two primary principles that guide the court's determination of whether dismissal under Rule 12(b)(6) should be granted.  First, a motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the nonmovant could prove no set of facts in support of its claims that would entitle it to relief.  *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957); *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir. 1994); see also *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing 5B WRIGHT & MILLER § 1357 at 598 (1969), for the proposition that "the motion to dismiss for failure to state a claim is

viewed with disfavor and is rarely granted"), *cert. denied*, 459 U.S. 1105 (1983).

Second, the court must accept all well-pleaded facts as true and view them in the light

most favorable to the nonmovant.  See *Capital Parks, Inc. v. Southeastern Advertising*

*and Sales System, Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Norman v. Apache Corporation*,

19 F.3d 1017, 1021 (5th Cir. 1994); *Chrissy F. by Medley v. Mississippi Department of*

*Public Welfare*, 925 F.2d 844, 846 (5th Cir. 1991).  However, conclusory allegations

and unwarranted factual deductions will not suffice to avoid a motion to dismiss.

*United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379

(5th Cir. 2003).  In addition, a court must not look beyond the pleadings when

determining whether a complaint states a claim upon which relief may be granted.

*Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 499-500 (5th

Cir. 1982), *cert. denied*, 464 U.S. 932 (1983).

   Though the instant Rule 12(b)(6) motion is purportedly on behalf of both

ATS and JTA, the motion contains absolutely no argument about why JTA should be

dismissed from this suit.  The motion does address the plaintiff's theory of liability

regarding ATS.  Edwards claims that ATS is liable to the plaintiff not only for the

actions taken by ATS but also for the actions taken by JTA.  That is, the plaintiff's

theory of liability as to ATS is based, in part, on the concept of successor liability.

According to Edwards, when JTA transferred substantially all of its assets to ATS,

that agreement was more than an asset transfer agreement -- it effectively merged JTA

- 21 -

into ATS.  In this court's prior memorandum opinion, the court noted its difficulty in resolving a similar motion to dismiss because neither of the parties addressed the glaring choice of law problem:  which state's law should this court, sitting in Texas, apply to determine whether  ATS, a Delaware corporation, assumed the liabilities of JTA, a North Carolina corporation?  In a surprising departure from their usual practice, the attorneys complied with this court's prior order and addressed this choice of law issue.

A federal court must generally apply the choice of law provisions of the forum state.  See *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) ("[T]he conflict-of-laws rules to be applied by a federal court in Texas must conform to those prevailing in the Texas state courts.").  As a general matter, Texas courts follow the RESTATEMENT (SECOND) OF THE CONFLICTS OF LAW ("RESTATEMENT (SECOND)") and the "most significant relationship" test.  See *Duncan v. Cessna Aircraft Company*, 665 S.W.2d 414, 420-21 (Tex. 1984) (stating the Texas supreme court "abandoned *lex loci delecti* and replaced it with the most significant relationship approach set forth in §§ 6 and 145 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS.").  Section 6 of the RESTATEMENT (SECOND) reads:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and
international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested
states and the relative interests of those states
in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular
field of law,

(f) certainty, predictability and uniformity of
result, and

(g) ease in the determination and application
of the law to be applied.

The RESTATEMENT (SECOND) goes on to list by subject matter the contacts relevant to the choice of law inquiry when determining which state has the most significant relationship.

Within any one case, the court need not apply the laws of a single state to all the issues raised therein. See *Webb v. Rodgers Machinery Manufacturing Company*, 750 F.2d 368, 374 n.10 (5th Cir. 1985) ("Stating that Texas and California law governs different issues in this litigation is fully consistent with choice of law principles . . ."). "The courts have long recognized that they are not bound to decide all issues under the local law of a single state." RESTATEMENT (SECOND) § 302, cmt. d. "[T]he law of

the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." *Duncan*, 665 S.W.2d at 421.

Thus, as an initial matter, the court must determine what area of law should govern the question of whether ATS is liable (as a successor) for JTA's debts in order to ascertain which contacts are relevant to the most significant relationship test. Three separate fields of law could be implicated by this sale of assets: tort law; contract law; and corporate law.  With regard to issues involving tort law, the RESTATEMENT (SECOND) directs:

> Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) § 145(2); see *Webb*, 750 F.2d at 374 (discussing the application of § 145 for tort issues in Texas).

For issues of contract law, Texas applies § 188 of the RESTATEMENT (SECOND), which reads, in pertinent part:

- 24 -

[T]he contacts to be taken into account in applying the
principles of § 6 to determine the law applicable to an issue
include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the
contract, and

(e) the domicil, residence, nationality, place
of incorporation and place of business of the
parties.

RESTATEMENT (SECOND) § 188(2); see also *Compaq Computer Corporation v. Lapray*,
135 S.W.3d 657, 680 (Tex. 2004) (applying § 188 to contract choice of law issue).

Though the Texas courts have generally accepted the RESTATEMENT (SECOND),
there are no Texas state court cases expressly adopting the sections of the restatement
regarding corporate governance. However, at least two cases from the Fifth Circuit
have affirmed the use of the RESTATEMENT (SECOND) § 302 regarding internal
corporate affairs. See *Maher v. Zapata Corporation*, 714 F.2d 436, 464 (5th Cir.
1983); see also *Webb*, 750 F.2d at 374 n.11. Under § 302(2), "[t]he local law of the
state of incorporation will be applied to determine such issues, except in the unusual
case where, with respect to the particular issue, some other state has a more
significant relationship to the occurrence and the parties." See also *Maher*, 714 F.2d
at 464; *Arkanase v. Fatjo*, Civ. A. No. H-91-3140, 1993 WL 208440, at *2 (S.D. Tex.

Apr. 22, 1993), *aff'd*, 130 F.3d 657 (5th Cir. 1997).  The comments to § 302 suggest that the law of a state other than the state of incorporation may apply in cases where the corporation's contact with the state of incorporation is limited to merely being incorporated in that state.  *See* RESTATEMENT (SECOND) § 302 cmt. (2)(g).  That is, when the principal place of business is located elsewhere and the corporation has no contacts with the state of incorporation other than being incorporated there, the law of the state where the principal place of business is located may apply.  See *id.*

ATS argues that the court should apply Texas law to the issue of whether successor liability has attached based on § 188, the contract section, of the RESTATEMENT (SECOND).  *See* Amended Motion to Dismiss for Failure to State a Claim and Memorandum in Support Thereof on Behalf of Defendants Atlas Telecom Services USA, Inc. and John Tidrow & Associates ("ATS Motion to Dismiss") ¶ 8. ATS reaches this conclusion by applying § 188 not to the sale of assets agreement between ATS and JTA but to the contract for the sale of debentures between Millennium and Edwards.  The court finds this argument unpersuasive.  While the substantive issues of breach of contract (among other claims) *may* be governed by Texas law,[4] the sale of debentures bears no relationship to the question of successor

---

[4]        The word "may" in the preceding sentence is used advisedly.  The court expresses no opinion as to whether Texas law will apply to the breach of contract claim.  The information contained in that sentence is illustrative only.  What substantive law will apply to the individual claims asserted by Edwards is not a question presently before the court.

liability.  The specific issue that the court must focus on is whether the sale of assets

agreement created successor liability sufficient to render ATS a successor to JTA's

liabilities (if any) to Edwards.  That specific issue has no relationship to the state of

Texas.

    For similar reasons, the court can dispose of ATS's argument that § 145

regarding torts should apply to the court's determination of choice of law.  While the

plaintiff alleges that the sale of assets agreement amounted to one or more torts,

injury from which was felt in Texas, the issue of whether the sale of assets agreement

subjects ATS to successor liability is not a question that sounds in tort.

    Accordingly, the court is left with two possibilities regarding the substantive

law involved in this specific issue: contract law (stemming from the sale of assets

agreement) or corporate law.  The court finds the latter to be applicable.  While the

sale of assets agreement purports to be a standard contract, the effect of the contract,

as alleged by Edwards, is far more complex.  According to the complaint, the

execution of the contract created successor liability despite the fact that the issue of

liability was not a term in the contract.  Section 301 of the RESTATEMENT (SECOND)

provides some insight on the issue.  It states that if a corporation engages in an

activity that could otherwise be performed by an individual, the conflicts of law

provisions applicable to individuals should also be applicable to the corporation.

However, if the corporate action is an activity that an individual could not engage in,

then § 302 should apply.  The instant issue falls under § 302.  Though an individual

can enter into a contract with another individual to transfer assets of the individual,

successor liability is an issue unique to corporate entities.

Finding that § 302 applies does not, however, resolve the issue of which state's

law should apply.  Specifically, there are three possibilities: Delaware (the state of

ATS's incorporation); Virginia (ATS's principal place of business); or North Carolina

(the state of JTA's incorporation).  Neither party argues for the application of

Virginia law, and there is insufficient evidence before the court to apply the exception

to the general rule, as articulated in § 302 and expounded upon in comment (2)(g), to

make a determination regarding the contacts between Virginia and ATS.  Though

JTA argues for the application of Texas law, it avers, in the alternative, that Delaware

law should apply.  Edwards seeks to have the law of North Carolina applied.  The

court agrees with the plaintiff on this issue but for reasons other than those asserted

by Edwards.

While § 302 of the RESTATEMENT (SECOND) states that the law of the state of

incorporation generally applies, neither the text of that provision nor the comments

thereto indicate which state's law should apply when there are two corporations, each

with a different state of incorporation.  Upon exhaustive research by this court, it

appears that no other court has addressed this issue.  When applying the relevant

factors listed in § 6, the court found § 6(2)(c) to be the controlling factor.  Section

6(c)(2) states that the court should consider "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue."  Though Delaware has a clear interest in protecting corporations created under its laws from creditors attempting to attach liability where none exists, the interest of North Carolina is far greater.  North Carolina must protect the interests of creditors in order to assure the survival of corporations incorporated under its laws.

The instant case serves as a prime example of the reason that the law of the predecessor corporation's state of incorporation should be applied.  In the instant case, the major asset involved is a government contract.  The contract itself is worthless unless some entity as a going concern can fulfill the terms of the contract. In theory, had JTA not transferred this asset to ATS, JTA could have fulfilled the contract and generated income sufficient to satisfy its creditors (including Edwards). By transferring this asset, JTA forewent the possibilities both of creating income and of satisfying its debts.  When Edwards accepted the guarantee by JTA, Edwards had the right to anticipate North Carolina law, JTA's state of incorporation and location of its principal place of business, would govern the activities of JTA.  If a debtor corporation were able to circumvent the repayment of its debts merely by transferring its assets to a corporation located in or formulated under the laws of a state which provide greater protection against successor liability, why would creditors continue to loan money to corporations within the state of North Carolina?  North Carolina's

- 29 -

interest in protecting creditors who do business with corporations incorporated under its laws far outweighs Delaware's interest in protecting a single corporation from successor liability arising from the potentially fraudulent activities perpetrated by that Delaware corporation.

Having found that North Carolina law should apply to the issue of whether successor liability can attach from the sale of assets agreement, the court must determine the rules of successor liability under North Carolina law.  The general rule in North Carolina is that "a corporation that purchases all, or substantially all, of the assets of another corporation is not liable for the old corporation's debts." *Becker v. Graber Builders, Inc.*, 561 S.E.2d 905, 909 (N.C. App. 2002).  North Carolina recognizes four exceptions to this general rule of successor liability:  "(1) where there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) where the transfer amounts to a *de facto* merger of the two corporations; (3) where the transfer of assets was done for the purpose of defrauding the corporation's creditors; or (4) where the purchasing corporation is a 'mere continuation' of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers." *G.P. Publications, Inc. v. Quebecor Printing -- St. Paul, Inc.*, 481 S.E.2d 674, 679 (N.C. App. 1997).  Both the plaintiff and this court were unable to identify a single North Carolina case or statute oullining the factors necessary to establish *de facto* merger.

Edwards argues that successor liability should attach solely on the basis of the *de facto* merger exception.  However, the court finds that for the purposes of this Rule 12(b)(6) motion the issue of successor liability should be determined not under the *de facto* merger exception but under the third exception -- a transfer of assets for the purpose of defrauding the corporation's creditors.  Though Edwards in its response to the Rule 12(b)(6) motion to dismiss focuses solely on the *de facto* merger exception, Edwards' theory of ATS's liability, as articulated in the complaint, alleges that the transfer of JTA's assets was done for the purpose of defrauding JTA's other creditors.

To demonstrate that a transfer of assets was done for the purpose of defrauding a creditor, the plaintiff must show, at a minimum, that there was a transfer.  See *Morgan v. Cavalier Acquisition Corporation*, 432 S.E.2d 915, 926 (N.C. App. 1993) (finding, on a motion for summary judgment, that the plaintiff's allegation that a transfer of assets occurred was sufficient to create a genuine issue of material fact on the issue of successor liability).  Inadequate consideration for the assets is an additional factor used to determine whether the asset transfer was for the purpose of defrauding a creditor.  See *Budd Tire Corporation v. Pierce Tire Company, Inc.*, 370 S.E.2d 267, 269 (N.C. App. 1988).  The amended complaint alleges that there was a sale of assets from JTA to ATS and that the assets were transferred for no consideration, a fact which ATS has yet to refute.  *See* Complaint ¶ 26.

Thus, the court finds that Edwards has sufficiently stated a claim against ATS.

- 31 -

III.  <u>CONCLUSION</u>

For the reasons stated above, Barnes and ATN's motions to dismiss for lack of personal jurisdiction are **GRANTED**.  ATS's motion to dismiss for failure to state a claim upon which relief can be granted is **DENIED**.

**SO ORDERED**.

July 13, 2007.

A. JOE FISH
CHIEF JUDGE

- 32 -